UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
GILEAD SCIENCES INC., *et al.*,

                            Plaintiffs,                     **OPINION AND ORDER**

     -against-                                      24-CV-4259
                                                                         (Merle, J.)
PETER KHAIM, *et. al.*,                          (Marutollo, M.J.)

                            Defendants.

------------------------------------------------------------------------x
**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

       Plaintiffs Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead Sciences, LLC (together, "Gilead") commenced this action on June 17, 2024 alleging that Defendants have participated in a counterfeiting conspiracy involving Gilead-branded medications. *See generally* Dkt. No. 1. Gilead brings claims against Defendants for trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); false descriptions and false designations of origin in commerce in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); false advertising in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); trademark dilution in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125) and New York General Business Law § 360-1; deceptive business practices in violation of New York General Business Law § 349; and common-law unjust enrichment and unfair competition. *Id.* at ¶ 12; 142-198.

       One of the Defendants in this action is Irina Polvanova. Gilead alleges, *inter alia*, that Ms. Polvanova "supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead medications." *Id.* at ¶¶ 48, 140-141.

       Currently before this Court is Ms. Polvanova's Motion to Stay Discovery. Dkt. Nos. 115, 133. Ms. Polvanova seeks a "tailored stay of discovery only applicable to her in the instant civil proceedings" for a period of 90 days. Dkt. No. 133 at 1. Ms. Polvanova contends that a stay of

discovery is necessary to protect her Fifth Amendment rights, which she argues "will be unduly prejudiced if she is required to defend this case" while criminal charges—involving identical conduct and allegations as outlined in Gilead's Complaint—are pending against her in the United States District Court for the Southern District of New York. *See* Dkt. Nos. 115, 133. Ms. Polvanova is scheduled to be sentenced on February 5, 2025. Dkt. No. 133 at 2.

For the reasons set forth below, Ms. Polvanova's Motion to Stay Discovery is **DENIED**.

## I.  BACKGROUND

### A.  Relevant Facts

The Court assumes the parties' familiarity with the allegations contained in this action. Gilead is a pharmaceutical company engaged in the business of developing and marketing a "large portfolio of lifesaving medications"—many of which possess "well-established and famous" registered trademarks that appear on the packaging, tablet, and "instructional outserts" of various drugs. Dkt. No. 1 at ¶¶ 13-15. Gilead's portfolio includes "drugs for the treatment or prevention of HIV" which bear certain established trademarks denoting authenticity. *Id.*

Gilead became aware a "wide-reaching and prolific counterfeiting conspiracy" involving its products following the receipt of "multiple complaints" from patients and pharmacies who had purchased Gilead-branded products from a pharmaceutical distributor. *Id.* at ¶¶ 73-75. Following investigations involving Gilead's own "in-house experts" and an "outside laboratory" (*id.* at ¶ 74), Gilead became aware of a conspiracy involving "more than a hundred thousand bottles of counterfeit Gilead medications" generating millions in illicit proceeds. *Id.* at ¶ 75. The individuals and entities furthering this conspiracy, many of which are Defendants in this action, purportedly engaged in a complex scheme outlined in great detail in the Complaint. *See, e.g. id.* at ¶¶ 76-83.

2

As noted above, Ms. Polvanova, a resident of Queens, New York, is alleged to have "supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead medications." *Id.* at ¶ 48. Ms. Polvanova is alleged to have engaged in such actions through her ownership of Galaxy RX Inc., an "active single-location retail pharmacy located in Queens" through which she allegedly purchased and sold counterfeit HIV medications. *Id.* at ¶¶ 49, 140. Gilead also alleges that Ms. Polvanova participated in a money laundering scheme involving payments to other Defendants in this action to "disguise the nature of the payments." *Id.*

Ms. Polvanova is also a defendant in a criminal action pending in the United States District Court for the Southern District of New York captioned *United States of America v. Boris Aminov, Christy Corvalan, Irina Polvanova, Roman Shamalov, Antonio Payano, David Fernandez, Crystal Medina, Juan Hernandez a/k/a "Pop," and Albert Yagudayev, a/k/a "Jeff,"* No. 23-CR-110 (MKV) (the "Criminal Action"). According to Ms. Polvanova, in the Criminal Action, Ms. Polvanova is alleged to have engaged "in a scheme to defraud Medicaid, Medicare, and private insurance companies out of millions of dollars through the trafficking of black-market HIV medication." Dkt. No. 115 at 3-4. As Ms. Polvanova notes, the allegations made against her in the Criminal Action are "identical to the allegations set forth against her in [Gilead's] Complaint." *Id.* at 5.

B. **The Motion to Stay**

On August 27, 2024, Ms. Polvanova filed a Motion to Stay Discovery. Dkt. No. 115. In her Motion, Ms. Polvanova requests that this Court "exercise its discretionary power to stay discovery" in the civil action "until the completion of the Criminal Action" to preserve Ms. Polvanova's Fifth Amendment privileges against self-incrimination. *Id.* at 6-7. Ms. Polvanova asserts that discovery should be stayed because (i) the issues in both the civil and criminal actions

3

are "undisputedly identical" (*id.* at 9); (ii) Ms. Polvanova has been indicted (*id.*); (iii) Gilead will not be prejudiced by a delay caused by the stay (*id.* at 10); (iv) the "preservation of [Ms. Polvanova's] Fifth Amendment Rights" outweighs Gilead's interest in the expeditious resolution of this civil action (*id.*); (v) Ms. Polvanova's "private interests" in preserving her Fifth Amendment privilege and the "burden" of having to choose between participating in this action and preserving her constitutional rights weigh in favor of a stay (*id.* at 11); (vi) "judicial efficiency" weighs in favor of a stay (*id.* at 12); and (vii) the public's interest—as "implicated in both the criminal and civil proceedings"—are adequately protected (*id.* at 12).

Gilead opposed Ms. Polvanova's request for stay. *See generally* Dkt. No. 125. Gilead argues that Ms. Polvanova has failed to show that discovery in this matter prejudices her constitutional rights in a manner that outweighs Gilead's interests. *Id.* at 2. Deeming such requests "an extraordinary remedy," Gilead argues, *inter alia*, that a stay of discovery will prevent it from "determining the full extent of the counterfeiting conspiracy" and from taking "additional steps" to shut down the conspiracy. *Id.* at 6. Gilead also asserts that a stay of discovery in this action will prevent it from obtaining discovery that is relevant to other defendants in this action—including Ms. Polvanova's "direct co-conspirators alongside whom she was indicted." *Id.*

Further, Gilead asserts that Ms. Polvanova's assertion is an improper blanketed assertion of her Fifth Amendment rights as she fails to describe how or why discovery in this action could prejudice her constitutional rights under the Fifth Amendment. *Id.* at 7. Gilead adds that Ms. Polvanova's request may result in lengthy extensions of discovery since she could only anticipate that the Criminal Action would conclude in 90 days. *See id.* at n.1.

On October 2, 2024, Ms. Polvanova renewed her request for a stay. Dkt. No. 133. Of note, Ms. Polvanova informed the Court that, on October 1, 2024, she pled guilty to a one count

4

superseding information charging her with conspiracy to commit health care fraud in connection with Criminal Action.  *Id.* at 1.  Ms. Polvanova is scheduled to be sentenced on February 5, 2025. Dkt. No. 133 at 1.

In light of those developments, Ms. Polvanova renewed her request for a 90-day stay of discovery "expecting a favorable resolution in this case resulting from [Gilead's] more thorough review of the discovery and evidence available from the government and their own subpoenaed bank records of Galaxy Rx."  *Id.*  Ms. Polvanova notes that "[s]hould no resolution of this case be reached within the 90-days, an assessment of whether an extension of the stay request until sentencing will be necessary."  *Id.*[1]

Gilead opposed Ms. Polvanova's renewed motion.  Dkt. No. 134.  Gilead contends that Ms. Polvanova's renewed application fails to identify any specific manner in which she will suffer undue prejudice absent a stay.  *Id.* at 2.  Moreover, Gilead contends that Ms. Polvanova's expectation of a "favorable resolution" is not an appropriate rationale for a stay of discovery—but is instead "a request for indefinite stay until sentencing," arguing that Ms. Polvanova is unable to offer this Court any assurances of an exact sentencing date.  *Id*. at 4.

## II.  **LEGAL STANDARDS**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d at 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  Although the Constitution "does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings," this

---

[1] During a status conference on October 11, 2024, Ms. Polvanova's counsel stated that he "would rather just say" that the stay would be in effect "until the date of sentencing." Dkt. No. 138 at 17.  At the same time, he acknowledged that he sought 90 days "to accommodate the process" based on the relevant case law.  *Id.*

Court may nonetheless "decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action." *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (internal quotation marks omitted). As the Second Circuit has observed, "[a] stay can protect a civil defendant from facing the difficult choice between being prejudiced in the civil litigation, if the defendant asserts [their] Fifth Amendment privilege, or from being prejudiced in the criminal litigation if [they] waive[] that privilege in the civil litigation." *Louis Vuitton*, 676 F.3d at 97. The party seeking a stay "bears the burden of establishing its need." *Capak v. Epps*, No. 18-CV-4325 (RA), 2018 WL 6726553, at *2 (S.D.N.Y. Dec. 21, 2018).

In determining whether to stay a civil proceeding pending resolution of an ongoing criminal proceeding, courts in this Circuit consider such factors as (1) the extent to which the issues in the criminal case overlap with those presented in the civil case, (2) the status of the criminal case, (3) the private interests of and burden on the defendants, (4) the private interests of the plaintiffs, (5) the interests of the courts, and (6) the public interest. *See Louis Vuitton*, 676 F.3d at 99; *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (listing factors and staying case where overlap between civil case and pending criminal case created "quandary of [defendants] choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case"). Consideration of these factors, however, "can do no more than act as a rough guide for the district court as it exercises its discretion," which still "demands a particularized inquiry into the circumstances of, and the competing interests in, the case." *Louis Vuitton*, 676 F.3d at 99 (quoting *Banks v. Yokemick*, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001)).

6

## III. DISCUSSION

Ms. Polvanova argues that a stay is warranted because proceeding in this action while the Criminal Action is pending would undermine her Fifth Amendment privilege against self-incrimination. She contends that because there is substantial overlap between this action and the criminal action, she would face considerable prejudice absent a stay, and that Gilead would not be unduly prejudiced if a stay is granted. The Court disagrees.

### A.   Overlap of the Cases

As an initial matter, Ms. Polvanova asserts—and Gilead concedes—that there is an overlap between this civil case and the Criminal Action. Dkt. No. 115 at 5-6; Dkt. No. 125 at 5 ("Here, there is no dispute Ms. Polvanova has been indicted and that there is "overlap" between this civil action and Ms. Polvanova's criminal case."). Parallel cases substantially overlap when they "arise from the same facts and involve nearly identical issues." *Sec. & Exch. Comm'n v. Blaszczak*, No. 17-CV-3919 (AJN), 2018 WL 301091, at *2 (S.D.N.Y. Jan. 3, 2018). Here, as outlined *supra* in Section I.A, the Criminal Action alleges that Ms. Polvanova engaged "in a scheme to defraud Medicaid, Medicare, and private insurance companies out of millions of dollars through the trafficking of black-market HIV medication." Dkt. No. 115 at 3-4. Gilead's Complaint seeks to recover for alleged harm caused by Ms. Polvanova's participation in a counterfeiting conspiracy involving Gilead-branded medications. *See generally,* Dkt. No. 1. Specifically, Gilead's Complaint alleges that Ms. Polvanova exercised control over at least one pharmacy through which she allegedly purchased and sold counterfeit HIV medications. *Id.* at ¶¶ 49, 140.

In light of the above and the undisputed nature of this factor, this Court finds that the substantial overlap between the civil and criminal proceedings weighs in favor of a stay. *See also Weidinger v. Djokic,* No. 22-CV-8388 (RA), 2023 WL 4106274, at *3 (S.D.N.Y. June 21, 2023)

(finding that the "near-complete overlap between the conduct alleged in the two cases" weighed in favor of a stay).

### B.  Status of the Criminal Proceedings

A court's decision to grant a stay based on the status of one's criminal proceeding should be guided by "whether a prosecution is likely and imminent as opposed to a remote or purely hypothetical possibility." *Louis Vuitton*, 676 F.3d at 100 n.14. "Granting a stay of discovery may be especially appropriate where a party under criminal indictment is also required to defend a civil suit involving the same matter." *Am. Express Bus. Fin. Corp. v. RW Pro. Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 265 (E.D.N.Y. 2002).

While criminal proceedings may technically be ongoing (such as a pending sentencing), a guilty plea denotes that a defendant in a criminal action has "already been prosecuted for the events at issue"—which weighs against granting a motion for a stay. *See Capak*, 2018 WL 6726553, at *3 (denying a defendant's motion for a stay pending sentencing because, *inter alia*, the defendant has already pled guilty and was just awaiting sentencing); *see also Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1499 (S.D.N.Y. 1987) (denying a motion for a stay in the civil action where the defendant had already "negotiated and cooperated with the Government and entered a plea of guilty as part of an arrangement, thereby substantially decreasing if not extinguishing the risk of his further prosecution.").

Here, Ms. Polvanova provided this Court with a copy of her signed plea agreement dated August 26, 2024. *See* Dkt. No. 137; *see also* Dkt. No. 134-1 (plea hearing transcript). According to the plea agreement, Ms. Polvanova pled guilty to one count of "conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 3571." Dkt. No. 137 at 2. In connection with her guilty plea, Ms. Polvanova stipulated that "she caused patients with HIV to

8

receive illegally sourced, black-market prescription HIV medication." *Id.* In addition to lending additional support for the fact that this case and the Criminal Action overlap (*see supra* Section III.A), the plea agreement makes clear that "the defendant will not be further prosecuted criminally" (except for "criminal tax violations, if any") by the U.S. Attorneys' Office for the Southern District of New York. *Id.*

Ms. Polvanova fails to identify any specific reason undergirding her fear of future criminal prosecution. Given that "the party seeking a stay bears the burden of establishing its need," *Louis Vuitton*, 676 F.3d at 97 (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)), this Court finds that Ms. Polvanova has failed to establish the need for a stay under the second factor, which thus militates against a stay of discovery.

### C. Prejudice to Ms. Polvanova

Ms. Polvanova argues that she will be prejudiced if coerced into the "Hobson's Choice of either asserting her Fifth Amendment privilege" and be subject to adverse inferences or "risk providing evidence that can be used by the government at her sentencing." Dkt. No. 133 at 2. The Court is not convinced.

It is true that "[a] stay can protect a civil defendant from facing the difficult choice between being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he or she waives that privilege in the civil litigation." *Louis Vuitton*, 676 F.3d at 97. Although "courts have generally been concerned about the extent to which continuing the civil proceeding would unduly burden a defendant's exercise of his rights under the Fifth Amendment," a court's decision to grant or withhold a stay must be "based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Id*. at 97, 99.

9

Ultimately, the Second Circuit has made clear that a "defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Id*. at 98 (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995)) (internal quotations omitted).

Here, Ms. Polvanova's speculation that she might increase the nature and extent of her criminal penalties by participating in the civil action is "unsubstantial as the basis for a stay." *See Boesky*, 660 F. Supp. 1494, at 1498 n.3 (finding same). In *Boesky*, the court noted that "[t]here is little risk that submitting an appropriate Answer or asserting the Fifth Amendment privilege in these civil suits will prejudice [Boesky's] sentence in the criminal proceeding where Boesky has already acknowledged criminality by a plea of guilty. Of course, Mr. Boesky has no right to be free of inferences from the assertion of the privilege in these civil cases." *Id.* (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976)); *De'Omilia Plastic Surgery, PC v. Sweeton*, No. 12-CV-6415 (FLW), 2013 WL 6070037, at *3 (D.N.J. Nov. 18, 2013) (denying a motion for a stay citing the reasoning in *Boesky*). The Court will not evaluate the merits of a stay solely on "speculative and uncertain risks to [D]efendant's interests" where no showing of possible prejudice has been made. *Maldonado v. City of New York*, No. 17-CV-6618 (AJN), 2018 WL 2561026, at *2 (S.D.N.Y. June 4, 2018); *see also Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001) ("[S]ince depositions have not yet taken place, there is no way of measuring with any precision what questions defendants may refuse to answer, or what damage may be done to their position in the civil case by any assertions of privilege they might choose to make.").

Additionally, the Court credits Gilead's argument that "Ms. Polvanova is now in exactly the same position as two other individual defendants who are participating in this action: Jonathan Gavrielof and Roman Shamalov," as "Polvanova, Gavrielof, and Shamalov were named in the

10

same criminal indictment, all of them have now pled guilty in the criminal action, and all of them are awaiting sentencing." Dkt. No. 134 at 3. Neither Gavrielof nor Shamalov have sought a stay of discovery. As Gilead points out, "Polvanova fails to identify why she would supposedly face "extremely unfair prejudice" by proceeding to discovery in this action when her identically situated co-defendants would not." *Id.*

Accordingly, this Court finds that the third factor weighs against a stay of discovery.

### D.    **Prejudice to Gilead**

The Court must also consider the "private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay." *Trs. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). In this case, Gilead has a strong interest in proceeding with civil discovery. The Court credits Gilead's representations that this case's procedural history weighs in favor of an expeditious resolution of this litigation. Dkt. No. 125. Since this action commenced in June 2024, it has obtained an Expedited Discovery Order (Dkt. No. 16), Asset Freeze Orders (Dkt. No. 13, 20, 36), Seizure Orders (Dkt. No. 14) and Preliminary Injunctions (*see, e.g.,* Dkt. Nos. 84-85). The Court has already entered a discovery scheduling order, which is currently in effect. *See* Minute Entry dated Sept. 12, 2024.

Additionally, the Court finds that Gilead has an interest in protecting its valuable trademark where the proliferation of counterfeit goods threatened the value of its mark (monetary and otherwise) and impacted its revenue. *See Louis Vuitton Malletier S.A.*, 676 F.3d 83, 104; Dkt. No. 1 at ¶¶ 13, 14, 70, 72 (discussing the existence and value of Gilead's trademarks). Given the nature of this litigation, a stay here "could be very costly to Plaintiffs" *Nat'l Coal. on Black Civic Participation v. Wohl*, No. 20-CV-8668 (VM), 2021 WL 694557, at *3 (S.D.N.Y. Feb. 22, 2021)

11

(denying request for a stay pending resolution of a criminal case); *cf. Capak*, 2018 WL 6726553, at \*5 (explaining that the plaintiff "has a strong interest in proceeding with civil discovery" because a seventeen-month stay "could lead to faded memories and/or prevent Plaintiff from recovering on his tort claim for several years after the alleged injury").

Finally, "[t]hat defendant's conduct also resulted in a criminal charge against [her] should not be availed of by [her] as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim." *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980). As Ms. Polvanova notes that further extensions of a stay would be requested "[s]hould no resolution be reached within the 90-days" (Dkt. No. 133 at 1), this Court finds that Gilead will be prejudiced.

Accordingly, the Court finds that this fourth factor weighs against a stay of discovery.

### E.    The Public Interest and Interest of the Court

Finally, this Court finds that the public has an interest in the suspension of the counterfeiting enterprise alleged by Gilead. Dkt. No. 1 at ¶¶ 76-83.

In *Louis Vuitton Malletier S.A.*, the Second Circuit found that Louis Vuitton "plainly had a compelling interest in prompt resolution of the civil case, in part because of the apparent scale of the counterfeiting operation and the potential for lost sales and consumer confusion." *Louis Vuitton Malletier S.A.*, 676 F.3d 83, 104 (citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 375 (2d Cir.1997) (reminding courts that the "underlying purpose of the Lanham Act . . . is protecting consumers and manufacturers from deceptive representations of affiliation and origin."). Gilead alleges that Defendants sold "authentic-looking" Gilead-branded bottles repurposed with non-Gilead drugs, such as anti-psychotic medication, that do not treat HIV. Dkt. No. 1 at ¶¶ 7-8, 76-77. Gilead also alleges that defendants sold thousands of Gilead-branded

12

bottles with the correct Gilead medication but accompanied by fake government-required forms called "pedigrees." *Id*. at ¶¶ 76, 80, 82.  Since Gilead is in the business of, *inter alia*, producing "life-saving treatments for patients living with HIV" and "pre-exposure prophylactic, or PrEP, medication that protects against HIV-1 infection when taken as prescribed," (*id*. at ¶¶ 5), the consequences of Defendants' alleged conduct can be dire.  *Id*. at ¶ 68.  Because the foreign drugs in the counterfeit bottles were allegedly not obtained via proper prescriptions, and because individuals who received and ingested these counterfeits unwittingly missed their HIV treatment or falsely believed themselves to be protected against HIV infection (*id.*), Gilead commenced this action with a heightened interest in putting "an immediate stop to the sale of these dangerous counterfeit medications."  *Id*. at ¶ 12.  Therefore, the Court finds that Gilead has alleged enough facts to sustain a finding that the public's interest is likely to be implicated by the expeditious resolution of this action.

And where the court has "reason to proceed forthwith based on its own well-recognized interest in disposing 'of the causes on its docket with economy of time and effort for itself . . .'" *Louis Vuitton Malletier S.A.*, 676 F.3d 83, 104 (citing *Landis*, 299 U.S. at 254), this Court finds that this final factor weighs against a stay of discovery in this action.  *See* Fed. R. Civ. P. 1 (the Court has an obligation "to secure the just, speedy, and inexpensive determination of every action and proceeding.").

## IV.	CONCLUSION

On balance, and considering the totality of the *Louis Vuitton* factors applied here, the imposition of a stay is not warranted. In light of the foregoing, Ms. Polvanova's Motion to Stay Discovery (Dkt. No. 115, 133) is **DENIED**.

Dated:	Brooklyn, New York
	October 12, 2024	**SO ORDERED.**

	  */s/ Joseph A. Marutollo*
	JOSEPH A. MARUTOLLO
	United States Magistrate Judge