UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
GILEAD SCIENCES, INC., GILEAD SCIENCES
IRELAND UC, and GILEAD SCIENCES, LLC,

                           Plaintiffs,

            -against-

PETER KHAIM, *et al.*,

                          Defendants.
-------------------------------------------------------------------x

**OPINION AND ORDER**

24-CV-4259
(Merle, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

In this action, Plaintiffs Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead

Sciences, LLC (collectively "Gilead") allege that over thirty defendants participated in a wide-

spread counterfeiting conspiracy involving Gilead-branded medications. *See generally* Dkt. No.

1. Presently before the Court is Gilead's renewed motion to compel certain documents sought

pursuant to a subpoena issued to Defendant Irina Polvanova ("Defendant"). Dkt. No. 197.

Specifically, Gilead seeks documents relating to Defendant's fee arrangement and payments for

legal representation to her counsel, Moses & Singer LLP ("Moses & Singer"), arguing that the

information "could reasonably lead to information bearing on [Defendant's] profits" from her

participation in the alleged conspiracy. Dkt. No. 197; *see* Dkt. Nos. 191, 154. Defendant opposes

Gilead's motion.

For the reasons set forth below, the Court grants Gilead's motion.

**I.**      **Background**

      **A.**      **Relevant Factual and Procedural History**

The Court presumes familiarity with the underlying facts of this action and recounts only

those relevant to the instant motion. *See, e.g.*, *Gilead Scis., Inc. v. Khaim*, 348 F.R.D. 146, 147-

49 (E.D.N.Y. 2024); *see also Gilead Scis. Inc. v. Khaim*, 753 F. Supp. 3d 262, 267-68 (E.D.N.Y. 2024), *aff'd*, 2024 WL 5318631 (E.D.N.Y. Dec. 17, 2024); *Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 289-90 (E.D.N.Y. 2024).

Gilead is a pharmaceutical company engaged in the business of developing and marketing a "large portfolio of lifesaving medications"—many of which possess "well-established and famous" registered trademarks that appear on the packaging, tablet, and "instructional outserts" of various drugs. Dkt. No. 1 at ¶¶ 13-15. Gilead's portfolio includes "drugs for the treatment or prevention of HIV" which bear certain established trademarks denoting authenticity. *Id.*

Following the receipt of "multiple complaints" from patients and pharmacies who had purchased Gilead-branded products from a pharmaceutical distributor (*id.* at ¶¶ 73-75) and investigations involving Gilead's own "in-house experts" and an "outside laboratory" (*id.* at ¶ 74), Gilead became aware of a conspiracy involving "more than a hundred thousand bottles of counterfeit Gilead medications" generating millions in illicit proceeds. *Id.* at ¶ 75.

Gilead filed the present action on June 17, 2024, alleging that Defendants have participated in a counterfeiting conspiracy involving Gilead-branded medications. *See generally* Dkt. No. 1. Gilead brings claims against Defendants for trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); false descriptions and false designations of origin in commerce in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); false advertising in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); trademark dilution in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125) and New York General Business Law § 360-1;

deceptive business practices in violation of New York General Business Law § 349; and common-law unjust enrichment and unfair competition. *Id*. at ¶¶ 12, 142-198.[1]

Gilead alleges that Defendant "supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead medications." *Id.* at ¶ 48. Defendant is alleged to have engaged in such actions through her ownership of Galaxy RX Inc., an "active single-location retail pharmacy located in Queens" through which she allegedly purchased and sold counterfeit HIV medications. *Id.* at ¶¶ 49, 140. Gilead also alleges that Defendant participated in a money laundering scheme involving payments to other defendants in this action to "disguise the nature of the payments." *Id.*

Defendant has been subject to an Asset Freeze Order since June 18, 2024 (Dkt. No. 13), which was converted to a Preliminary Injunction on July 16, 2024 (Dkt. No. 85). Defendant is also a defendant in a criminal action pending in the United States District Court for the Southern District of New York captioned *United States of America v. Aminov*, No. 23-CR-110 (MKV) (the "Criminal Action"). According to Defendant, in the Criminal Action, Defendant is alleged to have engaged "in a scheme to defraud Medicaid, Medicare, and private insurance companies out of millions of dollars through the trafficking of black-market HIV medication." Dkt. No. 115 at 3-4.[2]

On August 27, 2024, Defendant filed a motion to stay discovery for 90 days pending the outcome of the Criminal Action. *See* Dkt. No. 115. On September 12, 2024, the Court held an initial conference in which it set a discovery schedule. *See* Minute Entry dated September 12,

---

[1] Gilead previously filed another action in this district involving similar allegations; that case remains pending. *See Gilead Scis., Inc. v. Safe Chain Sols. LLC*, No. 21-CV-4106 (AMD) (JAM) (E.D.N.Y.) ("*Gilead I*").

[2] Page citations are to the ECF-stamped page numbers.

2024.  The Court ordered, *inter alia*, that all fact discovery shall be completed by February 12, 2025 and that all discovery, including expert discovery, shall be completed by June 13, 2025.  *See id.*

On September 20, 2024, the undersigned granted in part and denied in part Defendant's motion, staying discovery related to Defendant through her change of plea hearing on October 1, 2024.  *See* Text Order dated September 20, 2024.  On October 2, 2024, Defendant renewed her motion to stay until the conclusion of sentencing, which Gilead opposed.  *See* Dkt. Nos. 133, 134.  After hearing argument from the parties and reserving ruling, the undersigned denied Defendant's motion to stay on October 10, 2024.  Dkt. No. 141.  Defendant subsequently appealed, and the Honorable Natasha C. Merle, the United States District Judge presiding over the matter, denied Defendant's appeal and rejected her request for a stay of discovery.  *See* Dkt. No. 168; *see also Gilead Scis., Inc. v. Khaim*, No. 24-CV-04259 (NCM) (JAM), 2024 WL 5318631, at *1 (E.D.N.Y. Dec. 17, 2024).

**B.    Gilead's Motion**

On November 18, 2024, Gilead filed its first motion to compel against Defendant, seeking compliance with the subpoena it served on Defendant to disclose information pertaining to her fee arrangement and payments to Moses & Singer.  Dkt. No. 148.  Per Gilead, "the subpoena seeks very specific, non-privileged information: namely, documents sufficient to show the source of all payments from or on behalf of [Defendant] received by Moses & Singer, as well as documents sufficient to show the dates and amounts of all payments from or on behalf of [Defendant]."  *Id.* at 2.  Specifically, Gilead requests the following:

REQUEST FOR PRODUCTION NO. 1

4

Documents sufficient to show the source of all payments from or on behalf of [Defendant] received by You or The Firm.[3]  For each source of payment, include the individual or entity making payment, any other or additional account owner(s) of which [Moses & Singer] are aware, account number(s), bank or other financial institution name(s), and form of payment (e.g., cash, check, wire transfer, precious metals or stones, etc.).  If cash, precious metals or stones, or other valuable goods were used for payment, specify the date on which you took possession, the method of transfer (including the container in which the cash, precious metals or stones were contained), and the individual or entity that performed delivery.

REQUEST FOR PRODUCTION NO. 2
Documents sufficient to show the dates and amounts of all payments from or on behalf of [Defendant] received by [Moses & Singer].

Defendant opposed Gilead's motion, arguing that "the source of all payments from or on behalf of [Defendant] to [Moses & Singer] implicates confidentiality and attorney-client privilege issues." *Id.* at 3.  On November 21, 2024, a status conference before the undersigned was held on the record, where, *inter alia*, Gilead's motion for information from Moses & Singer was discussed. Minute Entry dated Nov. 21, 2024.  The Court ordered the parties to further brief the dispute.  *Id.*

After the parties filed their briefs (Dkt. Nos. 154, 162), the Court issued its ruling on December 22, 2024.  *See generally* Dkt. No. 170; *Gilead*, 348 F.R.D. 146.  Concerning the requested information from Moses & Singer, the Court denied Gilead's motion, without prejudice to renewal.  *See Gilead*, 348 F.R.D. at 151.  The Court directed the parties to meet and confer to

---

[3] Gilead defines "You" and "The Firm" as follows:

> 1. "You" means Moses & Singer LLP and any and all predecessors and successors in interest, affiliates, agents, representatives, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Moses & Singer LLP, including but not limited to The Firm (as defined below).

> 2. "The Firm" means any law firm in which You have an ownership interest, are employed by, receive a salary or profit distribution from, or are otherwise affiliated with, and any and all predecessors and successors in interest, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of said firm.

Dkt. No. 148-4 at 7.

discuss whether Defendant would be willing to provide any of the requested information and whether Gilead would be amenable to limiting the time period for the information sought. *Id.*

On January 15, 2025. Gilead renewed its motion to compel the documents from Moses & Singer. *See* Dkt. No. 173. In a joint status report filed that same day, the parties indicated that they were unable to reach an agreement concerning compliance with Gilead's subpoena that was served on Moses & Singer. Dkt. No. 174 at 1.

On February 6, 2025, a discovery conference was held before the undersigned to discuss Gilead's renewed motion. *See* Minute Entry dated Feb. 6, 2025. In relevant part, the Court again denied Gilead's motion to compel without prejudice and ordered the parties to meet and confer following Defendant's guilty plea in the parallel Criminal Action, which required her to amend her answer in the instant action.[4] *Id.* In the event that the parties were unable to resolve the dispute, the parties were ordered to apprise the Court as to the status of the dispute by February 24, 2025. *Id.* The Court additionally scheduled a settlement conference between Gilead and Defendant for March 18, 2025. *Id.*

On February 24, 2025, the parties advised the Court that they were attempting to compromise concerning the documents from Moses & Singer. Dkt. Nos. 185, 186. The Court ordered the parties to provide an update as to their discussions by March 4, 2025. Text Order dated Feb. 24, 2025.

On March 4, 2025, the parties provided the Court with another update as to the status of the dispute. Dkt. No. 191. In the status report, Gilead asserted as follows:

> As Gilead has communicated to Moses & Singer, Gilead is willing to narrow the time period covered by the subpoena *to cover only the time when Moses & Singer began representing her in her criminal case to the present.* Gilead seeks information about the initial payments that [Defendant] made to Moses & Singer because, in criminal representations, the initial payment is often the largest one. But

---

[4] Defendant filed an amended answer on February 13, 2025. *See* Dkt. No. 184.

> Moses & Singer has objected to producing any documents in response to Gilead's subpoena at all, no matter the time period.

*Id.* at 3 (emphasis added).  The Court again ordered the parties to meet and confer in light of Gilead's willingness to limit its request.  Text Ordered dated Mar. 4, 2025.  The Court further allowed Gilead to renew its motion to compel discovery if the dispute could not be resolved.  *Id.*

After the Court granted a short extension for the parties to brief the instant motion, Gilead filed its renewed motion to compel on March 12, 2025. Dkt. No. 197.  Gilead seeks "(1) documents sufficient to show the source of all payments from or on behalf of [Defendant] to Moses & Singer, and (2) documents sufficient to show the dates and amounts of all payments from or on behalf of [Defendant] received by Moses & Singer," narrowed to when representation commenced.  Dkt. No. 154 at 1[5]; Dkt. No. 191 at 3.  Gilead contends that it is entitled to "test" Defendant's representations that she allegedly "earned almost no money from a multi-million dollar fraud for which she helped launder and conceal the profits, and that her legal fees are not paid out of those concealed profits but rather from generous benefactors."  *Id.* at 1.  Gilead argues that because "[o]ne of its remedies under the Lanham Act is [Defendant's] ill-gotten profits," the information it seeks is relevant because it "could reasonably lead to information bearing on [Defendant's] profits—such as documents showing how she pays her expensive attorneys[.]"  *Id.*  Thus, Gilead contends that the scope of the subpoena is proper under the Federal Rules of Civil Procedure.  *Id.* at 2-4.

---

[5] In the instant motion before the Court, Gilead notes that it "incorporated by reference the arguments made in its prior motions to compel. Dkt. No. 197 at 1 n.1 (citing Dkt. Nos. 154, 191).  The Court will cite to the page of those filings where relevant.

Defendant opposes Gilead's request.  Dkt. No. 199.[6]  Defendant asserts that Gilead's basis for the discovery is speculative and constitutes a "fishing expedition."  *Id.* at 2.  Defendant further contends that the documents should be directed at a separate criminal defendant in the Criminal Action, and that "revealing the identities of the family, friends and community members who have assisted [Defendant] to pay her legal fees will compromise and prejudice her right to counsel" in the instant action and in the Criminal Action.  *Id.*

### C.     Subsequent Filings and Settlement Negotiations

Following the parties' above-referenced submissions, the Court held a settlement conference between the parties on March 18, 2025.  Minute Entry dated Mar. 18, 2025.  At the conclusion of that conference, the parties indicated that they accepted the undersigned's mediator's proposal in principle; the parties were instructed to file the proposed consent judgment by March 28, 2025.  *Id.*

On March 28, 2025, the parties filed separate submissions concerning the settlement in principle.  Dkt. Nos. 202-203.  In short, Gilead represented that it provided Defendant with the proposed consent judgment, but that Defendant rejected the proposal and attempted to "renegotiate the mediator's proposal by demanding a lower settlement in value."  Dkt. No. 202.  Gilead thus asserted that there was no longer a settlement in principle.  *Id.*  In her submission, Defendant asserted that Gilead inaccurately characterized what occurred and that the parties were still actively in discussions regarding payment terms.  Dkt. No. 203.

On April 1, 2025, the Court held a conference concerning the status of settlement between Gilead and Defendant.  *See* Minute Entry dated Apr. 1, 2025.  The Court ordered the parties to

---

[6] Defendant's requests that the Court deny Gilead's motion to compel but does not formally move to quash the Subpoena.  The Court, however, treats Defendant's response (Dkt. No. 199) as both an opposition to Gilead's motion to compel and a motion to quash.

meet and confer and to update the Court on their efforts by April 4, 2025. *Id.* On April 4, 2025, the parties filed a status report pursuant to the Court's Order. Dkt. No. 205. Gilead again represented that the parties no longer had a settlement; Defendant, however, indicated that she was still willing to accept the terms of the mediator's proposal. *Id.* at 1-2. Thereafter, the Court twice ordered the parties to attempt to resolve the issues concerning settlement and to submit updated *ex parte* settlement letters to the Court. Text Order dated Apr. 4, 2025; Text Order dated Apr. 8, 2025. After receiving the requested letters, the Court ordered a continued settlement conference between the parties scheduled for April 28, 2025. Text Order dated Apr. 11, 2025.[7]

On April 15, 2025, the parties notified the Court that Defendant's sentencing in the Criminal Action had been adjourned to May 14, 2025. *See* Dkt. No. 210.

Fact discovery is currently closed, with two exceptions: (1) Defendant's deposition, which will be scheduled should the parties not fully resolve their claims at the April 28, 2025 settlement conference; and (2) discovery related to Gilead's current motion. *See* Text Orders dated Apr. 15, 2025; Mar. 17, 2025. Expert discovery remains ongoing.

## II.    Discussion

### A.    The Requested Discovery Is Not Privileged

"[T]he attorney-client privilege only protects confidential communications made for the purpose of obtaining legal advice." *Vingelli v. United States*, 992 F.2d 449, 454 (2d Cir. 1993). The United States Court of Appeals for the Second Circuit has found that "in the absence of special circumstances[,] client identity and fee arrangements do not fall within the attorney-client privilege because they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice." *Id.* at 453

---

[7] In light of the upcoming April 28, 2025 conference between Gilead and Defendant, the Court does not address whether the aforementioned settlement in principle is enforceable herein.

(citing *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 247 (2d Cir. 1986) (*en banc*));

*see Doe v. Sarah Lawrence Coll.*, No. 19-CV-10028 (PMH) (JCM), 2021 WL 197132, at *7

(S.D.N.Y. Jan. 20, 2021) (finding retainer agreements containing fee and other client information

was not privileged); *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 430 (S.D.N.Y. 2013) (stating

information related to fee arrangements was not protected by attorney-client privilege); *Berall v.*

*Teleflex Med. Inc.*, No. 10-CV-5777 (LAP), 2021 WL 5989936, at *2 (S.D.N.Y. Dec. 17, 2021)

(same); *Torres v. Toback, Bernstein & Reiss LLP*, 278 F.R.D. 321, 322 (E.D.N.Y. 2012) (same);

*Raspberry Junction Props. LLC v. Edwards Fam. P'ship LP*, No. 18-CV-01243 (WWE), 2019

WL 2602871, at *1 (D. Conn. June 25, 2019) (same).

The "special circumstances" that protect disclosure of such information are limited, and

include situations: where "disclosure would in substance be a disclosure of the confidential

communication between the attorney and the client"; and "where the substance of a confidential

communication has already been revealed, but not its source," and identifying that source

"constitutes a prejudicial disclosure of a confidential communication." *Vingelli*, 992 F.2d at 453

(first citing *In re Shargel*, 742 F.2d 61, 62-63 (2d Cir. 1984); and then citing *Colton v. United*

*States*, 306 F.2d 633, 637–38 (2d Cir. 1962)). Nevertheless, "[f]ee information may be sought as

evidence of unexplained wealth which may have been derived from criminal activity, and

information that fees were paid either by other clients or by third persons may be sought to

determine the identity of a benefactor." *In re Grand Jury Subpoena (Doe)*, 781 F.2d at 248.

Here, Defendant has not demonstrated that the requested information falls under any

"special circumstances" that warrants denial of Gilead's request. Apart from entirely failing to

articulate the relevant standard, Defendant does not assert, and the Court cannot infer, any unique

consideration that would override enforcement of Gilead's subpoena. Defendant fails to show that

complying with the subpoena would "inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously," *see In re Grand Jury Subpoena (Doe)*, 781 F.2d at 247-48, or that it would "thwart or prejudice the attorney-client relationship, which remains at the heart of the privilege." *Vingelli*, 992 F.2d at 454 (citing *In re Shargel*, 742 F.2d at 62-64).

Defendant argues that disclosure of the information "would create an unwarranted chilling effect upon, and severely impairs her right to counsel, which is of constitutional dimension with her sentencing upcoming, a critical stage in those proceedings." Dkt. No. 199 at 4. Defendant, however, fails to expound upon such sweeping and conclusory claims. More importantly, "'information is not protected by the [attorney-client] privilege even though the client may strongly fear the effects of disclosure, including incrimination.'" *Lefcourt v. United States*, 125 F.3d 79, 86 (2d Cir. 1997) (quoting *In re Shargel*, 742 F.2d at 62-63); *United States v. Pierre*, No. 22-CR-19 (FGG), 2023 WL 6387273, at *1 (S.D.N.Y. Sept. 28, 2023) (same). To hold otherwise may very well result in the privilege to serve as "an immunity for corrupt or criminal acts." *Benthos Master Fund, Ltd. v. Etra*, No. 20-CV-3384 (VEC), 2022 WL 4467249, at *7 (S.D.N.Y. Sept. 26, 2022) (quoting *In re Shargel*, 742 F.2d at 62). Gilead's request thus aligns with the notion that information concerning fee arrangements and payment of legal services potentially stemming from alleged criminal activity is discoverable. *See In re Grand Jury Subpoena (Doe)*, 781 F.2d at 248; *In re Shargel*, 742 F.2d at 63-64.

The Court further rejects Defendant's assertion that revealing the identity of those funding her legal fees would result in any prejudice. *See* Dkt. No. 199 at 2. "[A]n attorney's ability to give informed legal advice is not impaired by a rule allowing disclosure of such payments." *In re Shargel*, 742 F.2d at 64. Thus, "[t]he payment of another's legal fee is an act independent of [an explanation of a particular relationship that may be protected by privilege] and should not be

11

accorded more protection against disclosure under the attorney-client privilege than a payment directly to the person for purposes of his or her retaining a lawyer." *Id.* As explained above, Defendant has not demonstrated existence of any special circumstances that might override application of the general rule permitting disclosure of the discovery at issue.

Moreover, nothing suggests that production of Defendant's information will affect her ability to obtain informed legal advice in the instant case and in the Criminal Action. *See Vingelli*, 992 F.2d at 453; *In re Shargel*, 742 F.2d at 62. Consistent with the often-repeated axiom in this circuit, the Court elects to construe the attorney-client privilege "confined within the narrowest possible limits underlying its purposes." *Obeid v. Mack*, No. 14-CV-6498 (LTS) (HBP), 2016 WL 7176653, at *8 (S.D.N.Y. Dec. 9, 2016) (collecting cases).

Accordingly, the information subject to Gilead's subpoena is non-privileged and discoverable.

## B.    The Requested Discovery is Relevant and Proportional

Federal Rule of Civil Procedure 26(b)(1) permits parties to obtain nonprivileged information that it is relevant to "any party's claim or defense and is proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1); *see also Trooper 1 v. New York State Police*, No. 22-CV-893 (LDH) (TAM), 2024 WL 165159, at *4 (E.D.N.Y. Jan. 16, 2024) ("Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, recognizes that '[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case'" (internal citations omitted)); *Johannes*, 2019 WL 1958310, at *3 ("In general, a party may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party and proportional to the needs of the case").

"Information is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 47 (E.D.N.Y. 2018) (citing *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016)).  "Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial."  *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020).

Whether discovery is proportional to the needs of the case considers "the marginal utility of the discovery sought," *Soni*, 2020 WL 2836787, at *2, taking into consideration "the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses."  *In re Exactech Polyethylene Orthopedic Prod. Liab. Litig.*, No. 22-MD-3044 (NGG) (MMH), 2024 WL 4381076, at *3 (E.D.N.Y. Oct. 3, 2024).  Proportionality and relevancy are assessed together, and "the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate."  *Vaigasi*, 2016 WL 616386, at *14; *see also Soni*, 2020 WL 2836787, at *2.

Federal Rule of Civil Procedure 45 allows a party to serve a subpoena for production of documents on a non-party.  Fed. R. Civ. P. 45(a)(1).  Subpoenas served on non-parties are subject to the relevance and proportionality requirements of Rule 26(b)(1).  *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2018 WL 6712769, at *5 (S.D.N.Y. Nov. 30, 2018) (citations omitted) (explaining the relevance requirement of non-party subpoenas); *All Cnty.,* 2020 WL 5668956, at *2 (explaining the proportionality requirement of non-party subpoenas).  Rule 45 obligates the Court to modify or quash a subpoena that, *inter alia*, "requires disclosure of privileged or other protected information" or "subjects a person to undue

13

burden." Fed. R. Civ. P. 45(d)(3)(A). "[T]he party issuing the subpoena bears the initial burden of demonstrating the relevance of the requested documents," and "the party seeking to quash the subpoena bears the burden of demonstrating that one of the grounds for quashing a subpoena applies." *Malibu Media*, 2016 WL 5478433, at *2 (quotations and citations omitted). "The decision to grant or deny a motion to compel 'lies within the sound discretion of the district court.'" *In re Exactech*, 2024 WL 4381076, at *3 (quoting *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *4 (S.D.N.Y. Nov. 16, 2016)).

Here, Gilead's discovery request is within the scope of Rule 26 and permitted under Rule 45. First, the requested information is relevant. Under the Lanham Act, a successful plaintiff alleging trademark infringement is entitled to, *inter alia*, recovery of the infringing defendant's profits under Section 35(a). *See* 15 U.S.C. § 1117(a); *Deckers Outdoor Corp. v. It's Friday, Inc.*, No. 20-CV-10602 (VSB) (BCM), 2024 WL 5481211, at *3 (S.D.N.Y. Oct. 31, 2024) ("Under § 35(a) of the Lanham Act, a successful plaintiff may recover '(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.'" (citing 15 U.S.C. § 1117(a))), *report and recommendation adopted*, 2025 WL 886882 (S.D.N.Y. Mar. 21, 2025); *Van Leeuwen Ice Cream LLC v. Rebel Creamery LLC*, No. 21-CV-2356 (EK) (JRC), 2024 WL 1072046, at *2 (E.D.N.Y. Mar. 11, 2024) (citing *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 261 (2d Cir. 2014)). Information concerning Defendant's financial status, including her ability to pay her legal fees, thus bears on Gilead's claims in the instant suit. *See, e.g.*, *Persaud v. Costco Wholesale Corp.*, No. 24-CV-04336 (GRB) (JMW), 2025 WL 343444, at *5 (E.D.N.Y. Jan. 30, 2025) (permitting compulsion of documents related to the plaintiff's claim for damages); *Weihai Lianqiao Int'l Coop Grp. Co. v. A Base IX Co. LLC*, No. 21-CV-10753 (DEH), 2024 WL 3498850, at *3-*4 (S.D.N.Y. July 22, 2024) (reopening discovery to obtain information related to damages).

Defendant's assertion that "Courts do not allow pre-judgment discovery" is inapposite. Dkt. No. 199 at 3. Indeed, the purpose of the subpoena is not to evaluate whether Defendant can satisfy any judgment rendered against her. *See In re Navios S. Am. Logistics Inc.*, No. 24-MC-575 (LJL), 2025 WL 369717, at *10 (S.D.N.Y. Feb. 3, 2025) ("Under Federal Rule of Civil Procedure 26, district courts generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment" (internal quotations and citations omitted). Rather, the information pertains to damages available under the Lanham Act. *See* 15 U.S.C. § 1117(a). Absent any request or order to bifurcate the damages portion of the proceedings and stay relevant discovery—which have not been made here—the requested discovery is proper under Rule 26. *See FragranceNet.com, Inc. v. FragranceX.com, Inc.*, No. 06-CV-2225 (JFB) (AKT), 2007 WL 9710244, at *2 (E.D.N.Y. Aug. 28, 2007) (explaining bifurcation standard and allowing liability and damages discovery to proceed at the same time).

Further, the information sought is proportional to the needs of the case. As indicated by Gilead, the period of information requested has been narrowed to when Moses & Singer began representing Defendant in the Criminal Action. Dkt. No. 197 at 4. The narrowed scope of the subpoena thus remedies the concerns raised by the undersigned at the February 6, 2025 conference. *See* Dkt. No. 183 at 39 (raising the possible overbreadth in the initial subpoena). Additionally, the information will be subject to the confidentiality order governing this matter. *See* Dkt. No. 114.

Accordingly, the information Gilead seeks comports within the broad parameters of Rule 26, and it is entitled to information concerning Defendant's fee arrangement and payments to her counsel. *See, e.g.*, *Oxford v. Uddin*, No. 23-CV-4054 (DEH), 2023 WL 9111159, at *1 (S.D.N.Y. Dec. 20, 2023) (finding retainer agreement discoverable under Rule 26's "extremely broad" scope).

## III.    Conclusion

For the reasons set forth above, the Court grants Gilead's motion. The Court orders that, within thirty days of the date of this order,[8] Defendant shall comply with the subpoena and produce all non-privileged documents and information sufficient to show (1) the source of all payments from or on behalf of Defendant to Moses & Singer since commencement of her representation in the Criminal Action; and (2) the dates and amounts of all payments from or on behalf of Defendant received by Moses & Singer since commencement of her representation in the Criminal Action.

Dated:        Brooklyn, New York            **SO ORDERED.**
              April 21, 2025

                                             _/s/ Joseph A. Marutollo_
                                             JOSEPH A. MARUTOLLO
                                             United States Magistrate Judge

---

[8] To the extent any party appeals this order to Judge Merle, the thirty-day deadline will be stayed pending resolution of such appeal before Judge Merle.