UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
GILEAD SCIENCES, INC., *et al.*,          :
                                          :
                           Plaintiffs,            :    Case No. 24-cv-4259 (NCM) (JAM)
                                          :
v.                                        :
                                          :
PETER KHAIM, *et al.*,                    :
                                          :
                           Defendants.            :
                                          :
                                          :
-------------------------------------------------------------- x

### PLAINTIFFS' MOTION TO SEAL CERTAIN PORTIONS OF ITS MOTION FOR DEFAULT JUDGMENT DAMAGES AND PERMANENT INJUNCTION AGAINST ALL DEFAULTED DEFENDANTS

    Plaintiffs Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead Sciences, LLC (together, "Gilead" or "Plaintiffs") hereby move to seal certain portions of Gilead's motion for default judgment, damages, and a permanent injunction against the defaulted defendants.

    Gilead here principally seeks to seal information regarding confidential aspects of its private, negotiated business relationships with its authorized distributors (which are not at issue here). In related litigation addressing many of the same issues, *Gilead Sciences Inc. v. Safe Chain Solutions, LLC*, 21-cv-4106-AMD-JAM (E.D.N.Y.) ("*Gilead I*"), Judge Donnelly already twice granted motions to seal these types of information. *See Gilead I*, June 30, 2025 Dkt. Entry (granting motion to seal revised 56.1 statement); *Gilead I*, October 30, 2024 Dkt. Entry (granting motion to seal portions of revised 56.1 statement). So that there is a full record before the Court, Gilead provides its full motion to seal below, the majority of which is taken verbatim from Gilead's motions to seal in *Gilead I*, as appropriate.

## INTRODUCTION

Gilead recognizes the importance of providing public access to these proceedings, and embraces the opportunity to make the public fully aware of the scope and impact of Defendants' illegal counterfeiting activities. This is important not only to protect unsuspecting HIV patients and their loved ones, but also to deter future counterfeiters.

With this in mind, through this motion Gilead seeks only to *redact* certain small portions of its publicly filed motion for default judgment, damages, and a permanent injunction for the narrow objective of protecting certain confidential aspects of its private, negotiated business relationships with its authorized distributors (which are not at issue here). Gilead also seeks to seal the exhibits to the Declaration of Timothy A. Waters that support the redacted statements or that contain personal financial information. Further, Gilead seeks to seal information third parties produced in this litigation subject to the protective order regarding their customers and business operations.

The specific information that Gilead seeks to redact from its motion, and the exhibits thereto, are provided in **Exhibits A** (a proposed redacted version of Gilead's brief) and **Exhibits 2, 5-8, 9, 14-17, 32-35** submitted herewith.[1] Gilead proposes that the unredacted versions, filed under seal today, remain under seal for other parties' counsel and the Court.

## ARGUMENT

Whether a particular court submission may be sealed requires the application of a three-part test: <u>first</u>, the court must determine whether the record is a "judicial document"—i.e., one that is "relevant to the performance of the judicial function and useful in the judicial process"— in which case "the presumption of public access attaches." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d

---

[1] These exhibit numbers track the exhibits to the Declaration of Timothy A. Waters, dated August 1, 2025, which is filed in support of Gilead's motion for default judgment, damages, and a permanent injunction.

Cir. 2020). Second, if it is a judicial document, the Court must "'determine the weight of the presumption of access' to that document." *Id*. (quoting *United States v. Erie Cty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014)). Third, if a document is a judicial document and there is some presumption of public access, the Court must balance "competing considerations against" the presumption of public access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotations omitted); *Mirlis*, 952 F.3d at 59.

Ultimately, to determine whether a particular piece of information should be sealed, the Court must weigh "the role of the material at issue" in connection with deciding the case and the "resultant value of such information to those monitoring the federal courts" against "all of the factors that legitimately counsel against disclosure," including privacy or confidentiality interests on the part of the party moving to seal. *Mirlis*, 952 F.3d at 59; *see also United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Once the weight of the presumption of access is determined, a court must balance competing considerations against it.").

Here, the public certainly has a strong interest in ensuring that counterfeit HIV medicine is not flooding the marketplace, and that those responsible for such activity are held responsible for their actions. However, as set forth in further detail below, the public's interest in how Gilead is evaluating its financial damages (which is the evidentiary role in this case of the commercial information Gilead seeks to seal) is comparatively low, justifying that information remaining sealed when that interest is weighed against Gilead's interest in not losing competitive advantage vis-à-vis the market for authorized distributor relationships.

I.  **INFORMATION CONCERNING GILEAD'S CONFIDENTIAL AND PRORPIRETARY COMMERCIAL RELATIONSHIPS AND COGS DATA**

Gilead seeks to redact information in its motion regarding its confidential and proprietary commercial relationships with its authorized distributors, and its internal proprietary and confidential information about its pricing and costs of goods sold.

As set forth in Exhibit A, Gilead's proposed redactions on pages 14-15 relate to information about Gilead's internal cost of goods, which is more detailed than the information Gilead reports in its public 10K filings. Gilead likewise seeks to seal the exhibits supporting that information, Exhibit 9, for the same reason. Gilead's proposed redactions to page 13 involve payment terms contained in Gilead's confidential contracts with its authorized distributors. Gilead seeks also to seal the exhibits supporting those statements, Exhibits 5-8.

Gilead also seeks to seal the expert report of its damages expert, Gregory K. Bell, Ph.D., which likewise relies on information relating to Gilead's internal cost of goods and payment terms with authorized distributors to calculate the quantum of Gilead's damages from each defendant. This report is annexed to the Declaration of Timothy A. Waters, dated August 1, 2025, as Exhibit 2.

The narrowly tailored sealing of such commercially sensitive information is appropriate when its disclosure would allow competitors to gain an improper competitive advantage or otherwise cause competitive harm. *See Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*, 2024 WL 1349221, at *7 (S.D.N.Y. Mar. 29, 2024) (granting seal motion when the proposed redactions of "internal pricing methodologies" and "other proprietary methodologies" were "narrowly tailored to serve their cognizable interests"); *Northwell Health, Inc. v. Blue Cross and Blue Shield of South Carolina*, 2024 WL 3823201, at *12 (E.D.N.Y. Aug. 13, 2024) (granting seal motion when redactions "are restricted to sensitive, confidential, or proprietary

4

business information") (internal citations and quotations omitted); *PharmacyChecker.com LLC v. Nat'l Ass'n of Boards of Pharm.*, 2022 WL 4956050, at *2 (S.D.N.Y. Aug. 26, 2022) (sealing "operations and business strategies" and "financials," finding release would "provide valuable insight to competitors as to [Plaintiff's] current business practices, its financial condition, and the proprietary systems and processes it uses to maintain its business").

As we have previously explained, Gilead individually negotiates contracts with each of its authorized distributors. *Gilead I*, ECF No. 1146 at 2. These negotiations are conducted in a highly competitive market such that the disclosure of such information would cause significant commercial harm to Gilead. Then-Magistrate Judge Reyes acknowledged as much when he ruled that Gilead need only produce heavily redacted versions of these contracts in discovery, with disclosure limited to certain potentially-relevant pricing information. *See Gilead I*, July 31, 2023 Order. Specifically, Judge Reyes only required Gilead to produce information about "whether, and under what conditions and terms, those authorized distributors **are permitted to distribute the Gilead products at issue for below wholesale acquisition cost**." *Id*. (emphasis added). Similarly, though Judge Reyes did not have occasion to rule on the issue directly, the public disclosure of Gilead's **non-public** cost of goods sold data (beyond the public data Gilead files with the SEC) would cause immense competitive harm to Gilead, as it would provide Gilead's competitors with open access to information about how its supply chain operates and Gilead's cost structure. In sum, Gilead's narrowly tailored redactions of both categories of commercial information are well within the bounds of an appropriate request to seal.

## II.   INFORMATION PRODUCED BY DEFENDANTS CONCERNING THEIR CUSTOMERS AND TRADE SECRETS

Gilead also moves to seal certain exhibits to its motion that were produced by Defendants' financial institutions and other third parties that did business with the Defendants.

These exhibits are (1) spreadsheets providing details of Defendants' sales through online pharmacy-to-pharmacy platforms; (2) checks indicating Defendants' roles in the counterfeiting conspiracy at the heart of this case, and payments therefore; and (3) bank statements showing payments for counterfeit medications. Exhibits 14-17, 32-35. They contain information regarding the Defendants' third-party customers and sales and financial information.

The confidentiality rights in these documents belong to the producing third parties and/or the Defendants whose information is contained therein. The documents either contain sensitive financial information of the Defendants or third parties, or, at the time they produced these documents to Gilead, the producing third parties designed them as confidential under the protective order issued in this action. Because in at least some circumstances courts have ordered the sealing of documents containing customer and sales information, Gilead has filed them under seal for the Court's consideration. *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,* No. 14-MC-2542 (VSB), 2024 WL 2925064, at *1 (S.D.N.Y. June 10, 2024) (granting motion to seal exhibits with customer names); *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) ("[C]ourts have sealed customer lists containing identifying information of non-parties due to the 'significant privacy interests' at stake." (citation omitted)).

## CONCLUSION

For all the foregoing reason, Gilead respectfully requests that the Court permit sealing of Gilead's motion for default judgment damages and a permanent injunction as set forth herein.

Dated:  New York, New York
        August 1, 2025

                                              PATTERSON BELKNAP WEBB & TYLER LLP

                                              By:   */s/ Timothy A. Waters*
                                                       Geoffrey Potter
                                                       Timothy A. Waters
                                                       Thomas P. Kurland
                                            1133 Avenue of the Americas
                                            New York, New York 10036
                                            T:  212-336-2000
                                            E:  gpotter@pbwt.com
                                                  twaters@pbwt.com
                                                  tkurland@pbwt.com

                                            *Attorneys for Plaintiffs*
                                            *Gilead Sciences Inc., et al.*